The first case for argument this morning is 18-1414 McGinn v. DHS. The purpose of the Whistleblower Protection Act is to encourage disclosure of wrongdoing to persons who may be in a position to remedy it. Whistleblowers are encouraged to make such disclosures by providing protection against attacks on the government. In 2013, Ms. McGinn disclosed over $9 million in cost inefficiencies at the Los Angeles Field Office. That same year, she disclosed that one of DHS air charter contractors, CSI, was over-billing the government at over $2.5 million annually. Was that her job? Was she an auditor by assignment, or what was she doing? Ms. McGinn was a program manager, and the core function of that position was auditing. Ms. McGinn... Was she the chief of staff then, or did that happen later? In 2010, she became the chief of staff, which was a corollary duty. In 2012, she became a GS-15 program manager and maintained her chief of staff duties until Mr. Longshore came in to an acting assistant director capacity and removed her from her chief of staff position. Wait a minute, you just lost me. The events at issue occurred while she was chief of staff, or while she was program manager, or was she both? She was both. She was both.  In 2012, she was both a program manager and chief of staff. Significantly, on July 26th, when she made her first disclosure of over $9 million in cost inefficiencies at the Los Angeles field office, which directly implicated Deputy Executive Associate Director Timothy Robbins, who was previously responsible for overseeing that field office. But none of that is in dispute in this case, right? The dispute here lies in the conclusion that the agency has proven by clearing convincing evidence that it would have taken the same actions regardless, right? That's correct. So what is your argument with respect to why they have failed to do so, given the standard of review with which we apply to A.J.'s opinion? Two points. First, the administrative judge failed to address two of Ms. McGinn's claims, specifically her removal from ground transportation duties upon her second audit of cost inefficiencies at the Los Angeles field office, and her second removal from ICE air operations and auditing altogether following her audit of CSI Aviation, in which she uncovered over $2.5 million in overbilling annually. I mean, you say – no, you make the – you do make the argument repeatedly in your brief about the A.J. having failed to deal with some of these issues, but I'm not as familiar as you. We're in appellate court. I don't know exactly what the details are of every assignment she had, but it seems to me in reading the A.J.'s opinion from page – Appendix 23 to Appendix 26, there's a lot of discussion of other changes in her work schedule and her duties, other than just the chief of staff positions. So your argument is they didn't consider this, they didn't deal with it, they didn't opine on it, and there seems to be a fair amount of discussion about those issues, right? Not exactly. So there's a fair amount of discussion about three personnel actions, the first being her reassignment from the chief of staff position, being assigned selection memos, and not being selected as chief of staff of the Transportation Planning and Acquisition Unit. However, the initial decision is silent on the two claims, Ms. McGinn's removal from ground transportation following her audit of the Los Angeles field office, and her subsequent removal from auditing duties altogether following her – What about on page A24? On page A24, it says, Ms. Cain testified that she did not assign any audit work to the appellant, for example. The next paragraph down, it says, her responsibilities for audits diminished. There's other language with respect to the loss of auditing work on page A24, at least. How can you say that it's silent as to that? The fact that Ms. McGinn was removed from auditing is not in dispute, and that's corroborated by Ms. Cain's testimony that you just referenced, and Mr. McManamy's testimony as well. However, the administrative judge made no findings with respect to those claims. At the end of that section in her initial decision, she finds that the agency proved by clear and convincing evidence that she would have been reassigned from a chief of staff position, that she was not – Where is that? Because I'm looking on page A26, and it says, the agency has established by clear and convincing evidence that the appellant's work assignments were not related to her protected disclosures. It's not limited to the chief of staff position. So those assignments are limited to being assigned to draft selection memos. The core function of Ms. McGinn's position is her auditing duties. Those claims are not addressed by the administrative judge. I thought she was chief of staff at that time. That was a – Isn't that a core function of her duties? It was a corollary function. So she was a program manager first and foremost, and also the chief of staff for assistant director Helwig. And when acting assistant director Longshore came in and she made her first disclosure, she was on the same day removed from the chief of staff position. Although the administrative judge credits Mr. Robbins' testimony that it was typical for assistant directors to bring in their own chief of staff, what's absent from her acting in that capacity for only four and a half months, and he himself testified that there is no protocol for someone on a detail to bring in their own chief of staff. There is no documentary evidence supporting Ms. McGinn's removal from her chief of staff position. And this court in Miller correctly recognized that with these types of reassignments, you would assume that papers would attach. All we have with respect to Ms. McGinn's removal from her chief of staff duties is Mr. Longshore's uncorroborated testimony that prior to his arrival, he was already working to plus-up personnel. Wait a minute. I thought there was a lot of testimony from different people that the standard thing was for a new person to come in and pick her own chief of staff. Am I missing that, missing something about that? Two people testified to that. Mr. Robbins – All right. So you've got several people testifying. You've got Longshore's testimony. If the AJ gets to believe who she wants to believe, and we have a hard time here at the appellate level of saying that the AJ erred in her credibility determinations, right? I'm not asking this court to re-weigh the administrative judge's credibility determination, but this court can decide how much weight to give that credibility determination when looking at the record in the aggregate. Here, because – I don't understand the weight. He decides to credit their testimony. He decides it's credible, and he's going to credit it. You're saying that here at the appellate level, we can't disagree whether he credits it, but we can say he gave it too much credit? I don't understand the point. This court must review that finding to determine whether substantial evidence supports that decision. And here, the initial decision is silent on the countervailing evidence that undermines that testimony. And as a – This isn't just substantial evidence. I thought it was clear and convincing. So this court's standard of review is for substantial evidence, but that reads into the underlying burden that the agency has, the clear and convincing burden. So when reviewing for substantial evidence, it's to determine whether the agency met its steep burden to prove by clear and convincing evidence that it would have removed, in this But I still don't have an answer, I don't think, to my question about you said your answer to our deference to credibility determinations is, yeah, but you get to decide what weight they should be given. And I don't understand the parsing there. There are three or four people that testified in one way with regard to one thing, and the AAJ says, I believe them. What are we supposed to do with that? Yes, you can believe them. And yes, we defer to that, but we're not going to give it any weight. If not, why not? The testimony is not so clear. Mr. Robbins said that it's typical for an assistant director. Longshore testified that there is no protocol for an acting assistant director, which is what he was. He was only there for four and a half months. There is no documentary evidence supporting Ms. McGinn's removal from the chief of staff position. So looking in the aggregate, in Miller, for example, the court found that the- Can I ask you, I'm sorry, I'm interrupting you because I think that I see testimony that contradicts what you just said, and I just want you to explain it to me. So this is on page A533, and the question is, would it be routine or would it be unusual to change a chief of staff when an assistant director, a new assistant director, comes in, whether in acting or permanent capacity? And the answer is, it's not uncommon. I think every manager that has a chief of staff would want their own chief of staff. Why isn't that enough where the- AJ said that they believe this testimony. Why isn't that enough? Because it includes acting or permanent capacity. So Mr. Longshore's specific testimony is that there was no protocol for someone on a detail. So that testimony conflicts with Mr. Robbins' testimony that it was typical for an assistant director to bring in their own chief of staff. But in Miller, this court, in reviewing credible testimony, found that the government could not meet its steep burden based on conclusory testimony, unsupported by documentary evidence with no comparators. So even if this court finds that that testimony is credible and it was typical for an assistant director, even an acting assistant director, to bring in their own chief of staff- But aren't these comparators in the sense that they're comparators because you've got multiple people saying that new directors generally select their own chief of staff. That would go to the comparator prong of whether someone who's a similarly situated non-musal lawyer was treated the same. That's possible, but this court has recognized that bare testimony from the deciding officials is only minimum support for a personnel action, and the court must review the record in the aggregate. Here, the only documentary evidence suggesting that Mr. Longshore was planning to bring someone in is nothing. No emails, no memorandum. Didn't Miller say that there's no requirement that there be documentary evidence where there's sufficient testimony? So you may call it conclusory, but the AJ didn't think it was conclusory, and on appeal here I'm not sure where we are in determining whether or not it was too conclusory. So it required documentary evidence. I mean, Miller doesn't say documentary evidence is always required. That's correct. This court did not read in a corroboration requirement to testimony, but did clearly state that bare testimony in and of itself only provides minimal support for personnel actions, and the court must look to the other evidence of record. The chief of staff position is your least strong argument. There are several other points that you made. For example, they refused to give her the award that she had been recommended for. Let me ask you this. If I understand the record, her whistleblowing related to the operations at the L.A. office. Is that correct? Her first set of disclosures, correct. Were any of the officials involved in that mismanagement, which appeared from her audit, involved in the decision-making later on with regard to her work or her job or anything else? Were any of those officials involved? Yes, Deputy Executive Associate Director Timothy Robbins. Even when Assistant Director Marlon Pinheiro came in and was the deciding official responsible for the later personnel actions, Mr. Robbins was in her chain of command and was the approving official on the Director's Award. Okay, we're well into our rebuttal, so why don't, unless you want to use it all up, why don't you sit down and give the other side. May it please the court. The court should affirm the Administrative Judge's findings of independent causation because Ms. McGinn has not satisfied her burden on appeal of showing that those findings are unsupported by substantial evidence. Instead... Mr. Rosenberg, my problem is not with her burden. My problem is with yours. Yours was to establish by clear and convincing evidence that each one of these government actions was taken independently and without regard to her whistle, Ms. McGinn's whistleblowing activities. Isn't that correct? Yes, Your Honor. And if you take each one of these individually, the Chief of Staff replacement, the failure to give her an award, the reduction in her periodic report levels and all of that, you can make a reasonable argument that, okay, but I'm not sure it was clear and convincing in all cases, but when you put that whole picture together, it's a rather puzzling picture. How are we to deal with the clear and convincing evidence measure when we look at the whole picture of how the government treated her after she had made those whistleblowing claims? Well, respectfully, Your Honor, Ms. McGinn has focused her complaints against two of the management officials, Mr. Robbins and Ms. Pinheiro. With a handful of exceptions, the majority of the personnel actions about which she has complained, including the change in her duties, were carried out by other management officials, and there was no evidence to show that Mr. Robbins or Ms. Pinheiro had a hand in the assignment of day-to-day activities or other facets of Ms. McGinn's duties. But Robbins was in the chain of command, wasn't he? Yes, Your Honor, but just because somebody's in the chain of command doesn't mean that there's evidence that they had a hand in the actions about which the employee is complaining. So, for instance, in Carr, there was evidence that there was someone in the chain of command who had a motive of bias, of whistleblower bias, but that they were too attenuated from the actions about which the employee was complaining for there to be a lack of clear and convincing evidence to support the findings in favor of the agency. So while in some instances it's enough to show that someone removed had bias, you still have to show that there's a nexus between the person who has the bias and the actions about which the employee is complaining. So the chief of staff position, for instance, Your Honor recognized, and I think you all have heard recounting of the testimony, that the decision was made by Mr. Longshore before he took over as acting chief of staff. There was testimony that Mr. Robbins had to approve the addition of a full-time equivalent to the office, but not that he had a hand in selecting who would serve in that role or that he was a catalyst behind the change of the chief of staff. And frankly— Well, move on from the chief of staff position. That's the easiest one for you. Go ahead. I understand, Your Honor, but it's important to emphasize the change in chief of staff because the other changes in Ms. McGinn's duties flowed largely from that change in duties and change in position. So she went from being the chief of staff who had specific chief of staff duties under assistant director Helwig, who then retired. Then you had four acting directors or acting assistant directors coming in over the course of a year's time. None of those people were familiar with Ms. McGinn. Ms. McGinn was no longer chief of staff. She was still in the front office, but those people did not have a hand, at least after— She was also a program manager. That's right, Your Honor. Talk about that. What would Your Honor like to hear about it? She had, as a program manager, her duties would have involved programmatic duties, but ICER operations was experiencing a large amount of tumult in consolidation with the closure of the Kansas City office. Multiple witnesses testified to the amount of strain that put on the agency organizationally, and so there were people who had to do things that they wouldn't normally be asked to do. Ms. McGinn was asked to do things like write position descriptions and do things more of a human resources nature because Katrina Caine viewed her as a subject matter expert on those things and didn't trust anyone else to do it, especially on short time. So there was a crunch to close the Kansas City office and replace contractors with government employees, and they were having a hard time getting all the hiring done in time. So this is a continuum of change in duties and assignments that all flow from her being replaced as chief of staff. What the record frankly shows is perhaps Ms. McGinn was not managed to the best of her abilities, but a failure to manage somebody well is not the same as whistleblower reprisal. So, yes, we made a showing with respect to each of the facets or discrete facets of the change in her duties because that's the way Ms. McGinn framed her claim of changed duties. Could you address more specifically the change in her duties with respect to audits? Was she prohibited from performing audits altogether or was her role changed? So her testimony, and this is on pages 503 and 504 of the appendix, was that she was told to stand down from contacting the contracting officer's representatives. She has made arguments in her briefs here and in her papers before the administrative judge that she was told to stop auditing. That's not what her testimony was. Her testimony was that she was told to stop contacting the contracting officer's representatives. There were periods of time where she did not have auditing work, and consequently the change in her duties amounts to a personnel action that is sufficient to amount to a prohibited personnel practice if it's motivated by whistleblower animus. So, again, we're not disputing that there was a change in her duties and we're not disputing that those change in duties happened in a relatively short period of time after she made protective disclosures. But the people who she says were motivated by whistleblower animus, Mr. Robbins and Ms. Pinheiro, were not the people who were assigning her work after she was replaced as chief of staff. She hasn't alleged, she hasn't argued on appeal here, that Robin Baker, Katrina Cain, or even John Longshore were motivated by anti-whistleblower animus. And, in fact, each of those persons testified that they weren't. They weren't upset with any of it. They actually thought the audits were helpful for the agency. Is that correct? Mr. Longshore testified to that. Katrina Cain testified to that. Marlon Pinheiro testified to that. All of the management officials, and Mr. Robbins did too. And Ms. McGinn is saying there are alleged inconsistencies in their testimony  And without those two management officials' testimony, you cannot find that any of the personal actions that were taken were anything but whistleblower retaliation. And in order to do that, the court has to jettison credible testimony from multiple witnesses, which this court is loathe to do. So I do want to emphasize one thing. Ms. McGinn keeps referring to these changes in duties as though they are discrete claims. And they're not discrete claims. The way that she presented them in her briefs to the administrative judge and the way that she's presented them here is to refer to them as a single personnel action with various facets. If the court looks at pages 59, 61, 70 in particular, and pages 614, those are instances in the record where she framed her personnel action as a single personnel action with multiple facets, which is why it makes sense in the way we have presented it to the court that this is a continuum of events that occurred, all flowing from her change over as chief of staff. She's also repeatedly referred to the changes in her work duties as reassignments, but it appears she's doing that in a colloquial sense because the way that she framed her claims to the Office of Special Counsel was to characterize those not as reassignments under a particular subsection of 2302A2A, but instead as a change in duties, which is Romanet 12, not the separate Romanet dealing with reassignments. So again, this is not a case like Miller where somebody experienced repeated significant changes in assignments over a span of several years, was told to sit on a couch with absolutely no work to do for eight months, and where the finding of independent causation teetered on the testimony of a single agency witness with no corroboration of any kind. What do you understand is her position with the agency? Ms. McGinn's position with the agency at this point? I understand she's still employed as a program manager, and she still works for Ms. Pinheiro, or under Ms. Pinheiro. So these events occurred in 2013, 2014. It's now 2019, and she's still with the agency and still within Ms. Pinheiro's chain of command. Thank you. Thank you. We'll restore a couple minutes for rebuttal time. Although it is true that Ms. McGinn may have been assigned HR work, the government has provided no evidence explaining the pattern of removing Ms. McGinn's auditing duties following each disclosure, or why Chris McMenemy, the only other whistleblower in ICE Air Operations, was similarly removed from auditing after supporting Ms. McGinn's findings. Where is the evidence that she was removed from auditing? There seems to be conflicting evidence here, positions, some saying that her duties were just changed with respect to auditing as opposed to entirely removed. Ms. McGinn testified that in October of 2013, she was told that she could no longer have direct contact with the contracting officer representatives because her audit findings were upsetting them. The following month, she was told to stand... She was allowed to continue to do audits. She wasn't allowed to contact the contractors. Until the following month, in November, when she was told to cease auditing altogether. Ms. McGinn is still a program manager, but she has effectively been told to sit on the couch. She is no longer provided with raw data, and she is not performing any audits like she was before, and that was removed after she made these disclosures. Ms. Sotin, you understand that we sit as a court of errors. We don't make them, we correct them. Exactly in two sentences, what is it that the A.J. did wrong? As this court recently held in Smith v. General Services Administration, the initial decision must include an in-depth review and full discussion of the evidence that go to CAR Factors 2 and 3. Here, we have none of that. Absent that discussion, this court is otherwise at a loss to determine whether substantial evidence supports those findings. For those reasons, the court should reverse and remand for appropriate corrective action. Can you give me a record site for the testimony that says that she was no longer allowed to audit? That record site is at Appendix 504. And at Appendix 597, she talks about the only two audits that she has been asked to perform since in late 2015 and January 2017, in which three people had reviewed the audit before her. She was essentially rubber stamping someone else's work. She was not provided with raw data, and those audits are completely dissimilar from the work she was performing prior to her whistleblowing. Thank you. And both sides, and the case is submitted. The next case for argument is 18-2313, Incarnacion Campos v. Wilkie.